```
         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS
```

**DALE E. McCORMICK,**

                                   **Petitioner,**

            v.                           CASE NO. 06-3098

**PHIL KLINE, et al.,**

                                   **Respondents.**

<u>**O R D E R**</u>

This petition for writ of habeas corpus, 28 U.S.C. 2254, is before the court upon respondents' Motion to Dismiss (Doc. 14), petitioner's Motions to Extend State Court-Ordered Stay (Doc. 22), and to Expedite Proceedings (Doc. 23). Having considered all materials filed including the state court records provided, the court finds as follows.

<u>**PROCEDURAL HISTORY**</u>

Petitioner seeks to challenge his convictions in the District Court of Douglas County, Kansas, of possession of marijuana and obstruction of official duty (Kan.D.Ct. No. 00CR604)(hereinafter 2001 case or conviction). He was sentenced on these convictions on February 14, 2001. Petitioner is "presently serving" a sentence of 195 months imposed in Douglas County District Court on April 15, 2004, (Kan.D.Ct. No. 03CR236)(hereinafter 2004 case or conviction).

Upon initial screening of the Petition, this court issued an order requiring petitioner to show cause why this action should not be dismissed because he was not in custody under the 2001 convictions he seeks to challenge and for lack of total exhaustion.

Mr. McCormick filed an Amended Petition raising only exhausted claims, and a Response arguing he is currently in custody on his 2001 convictions.  The court then issued a show cause order to respondents, who filed a "Motion to Dismiss" on "the grounds that petitioner is not in custody on the conviction in question and therefore, this court does not have jurisdiction . . . ." Petitioner thereafter filed a Traverse.  The court then ordered both parties to expand the record on the custody issue, and both have filed responses.

**FACTS & STATE COURT PROCEEDINGS**

Petitioner's 2001 convictions resulted from a traffic stop in January, 2000, in which petitioner was observed speeding, ordered to exit his vehicle, and searched[1].  His first jury trial on the charges of marijuana possession and obstruction of official duty ended with a hung jury and in a mistrial.  Petitioner was convicted by a jury in his second trial[2].

Mr. McCormick was sentenced to a prison term of 11 months on the possession conviction and 10 days in the county jail on the obstruction conviction.  Petitioner alleges "the terms of incarceration were suspended and (he) was placed on unsupervised probation for 12 months."  See also State v. McCormick, No. 86,774 at *4 (Kan.App., December 20, 2002)("Defendant was sentenced to an

---

[1] The KCOA opinion on direct appeal contains a detailed summary of the factual background. In brief, Mr. McCormick could not produce vehicle insurance information or registration or personal identification; appeared nervous; and refused to exit the vehicle. He was placed under arrest, forced from the car, and a baggie of marijuana was found in his pants pocket.

[2] The first trial was conducted September 18 through 20, 2000. The second trial was from January 8 through 10, 2001.

underlying prison term of 11 months and placed on probation. This appeal followed."). The KCOA opinion on direct appeal indicated Mr. McCormick raised 17 issues including: (1) the trial court "infringed upon petitioner's right to counsel," (2) K.S.A. 21-3808, the obstruction offense statute, was void for vagueness and unconstitutionally broad, and (3) certain jury instructions were clearly erroneous. The KCOA affirmed Mr. McCormick's convictions in its December 20, 2002 opinion. A Petition for Review was summarily denied by the Kansas Supreme Court on March 24, 2003. McCormick filed a Petition for Writ of Certiorari in the United States Supreme Court, which was denied on October 6, 2003.

In February 2004, McCormick filed a Motion to Set Aside Verdict pursuant to K.S.A. 60-1507 in the Douglas County District Court (hereinafter 1507 motion). According to Judge Martin in her Memorandum Decision denying the motion, petitioner raised "two issues: (1) the court made no "'detailed inquiry' into whether the defendant's waiver of counsel" was knowing and intelligent; and, (2) the State failed to disclose material evidence." State of Kansas v. Mccormick, No. 00CR604 (Kan.D.Ct., Apr. 21, 2004). Judge Martin noted that petitioner's claim of abrogation of his right to self-representation argued on direct appeal was different than the Sixth Amendment claim presented in his 1507 motion.

Petitioner appealed Judge Martin's denial to the KCOA, State v. McCormick, Appellate Court Case No. 92497. The appellate court similarly found McCormick's argument on direct appeal was "not that the trial court failed to inform him of the facts

3

required under Buckland[3]; rather, his complaint is that the trial court restricted him some in examining witnesses and . . . ruled that either defendant or his counsel could make closing arguments." Id., at *8-*9.  The KCOA affirmed in an unpublished opinion on September 2, 2005.  The Kansas Supreme Court summarily denied his Petition for Review on December 20, 2005.  Petitioner executed his Petition in federal court on March 27, 2006.

**CLAIMS**

McCormick's main claim is that he never validly waived his right to counsel in the 2001 criminal proceedings.  He admits he did not raise this claim on direct appeal; but complains he was not furnished counsel and never waived his right to appellate counsel.  He states this claim was raised in his 1507 motion.

Petitioner also claims K.S.A. 21-3808 was unconstitutional as applied, facially overbroad, and void for being impermissibly vague.  In support, he alleges he was improperly charged with "obstruction of official duty" for refusing to submit to the illegal demand by police officer Farrar that he exit his vehicle to be searched "for identification."  He argued to the state courts that he had a constitutional right under the First, Fourth, Fifth, and Fourteenth Amendments to refuse to submit to an "illegal search order."

Finally, petitioner claims jury instructions at his trial

---

[3] In State v. Buckland, 245 Kan. 132, 138, 777 P.2d 745 (1989), the Kansas Supreme Court held the trial judge should inform a defendant desiring to proceed pro se that (1) he will be held to the same standards as a lawyer, (2) the trial judge may not aid him in his defense, and (3) it is advisable to have a lawyer.

"were contrary to federal law." In particular, he claims Instruction No. 9[4] misstated state and federal law and relied upon clearly erroneous factual findings. He objected to this instruction and exhausted his state court remedies on it. Petitioner also objected to Jury Instruction No. 7 regarding "obstruction of official duty" as "failing to require the jury to find an essential statutory element of that crime beyond a reasonable doubt." He raised the latter claim in his appeal to the KCOA, and "believes" he raised it in his Petition for Review.

**IN CUSTODY ISSUE**

This matter presents the threshold issue of whether or not this court has jurisdiction to hear petitioner's claims. The burden of establishing jurisdiction is upon the habeas petitioner.

"The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." Maleng v. Cook, 490 U.S. 488, 490 (1989), *quoting* 28 U.S.C. § 2241(c)(3) *and citing* 28 U.S.C. § 2254(a); Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 399 (2001). In Maleng, the Supreme Court reaffirmed its general rule that a petitioner who is no longer serving the sentences he seeks to challenge is not "in custody" and cannot bring a federal habeas petition directed solely at those

---

[4] Instruction No. 9 provided that under the law "an officer may direct a driver of a vehicle to exit a vehicle and submit to a search for firearms or other dangerous weapons" but "not for identification." The instruction further stated that if the jury found "the officer directed the defendant to exit his vehicle for a lawful reason, this lawful order is not invalidated by an order which is unlawful."

5

convictions.

None of the records provided by either party clearly establishes when or even if Mr. McCormick's 2001 probation term commenced or terminated[5]. Thus, this court cannot find the exact date on which his 2001 sentences were satisfied. However, on balance, the pertinent state court records[6] and simple logic support the finding that McCormick's sentence to 12 months of unsupervised probation imposed on February 14, 2001, even if stayed pending direct appeal, expired[7] before he filed this federal

---

[5] It is possible Mr. McCormick never signed an order of probation or met with the court services officer regarding his probation. It is clear from the sentencing record that the judge imposed a sentence of probation, and that McCormick agreed to terms of probation and was to contact the probation officer. McCormick was also ordered to submit verification to the officer within 120 days that he had completed the "Heartland recommendations."

[6] The most significant exhibit on this issue is the "Kansas Sentencing Guidelines Journal Entry of Judgment" entered in McCormick's 2004 criminal case. Respondents' Response to Court's Order to Expand Record (Doc. 20) Attach. 1, pgs. 1-8. This exhibit reveals several pertinent facts. First, petitioner did not object to his criminal history in the 2004 case. Second, he again chose to represent himself in the 2004 case, even though he argues here that his choice to proceed pro se in 2001 was not intelligent. Third, and most compelling, "Section VI. Recap of Sentence" includes a box for "Prior Case(s) to Which the Current Sentence is to Run Concurrent or Consecutive," and no cases are listed in this box. Finally, the Kansas Criminal History Worksheet containing Mr. McCormick's "prior record" includes his convictions in Case No. 00CR604 as part of his criminal history, but clearly provides: "Was Offender Under Custody Supervision at the time he/she committed the current offense? No." In addition, the KASPER inmate information sheet available from the Kansas Department of Corrections website shows only the 2004 convictions as the basis for petitioner's current incarceration.
McCormick's allegations that he remains in custody are conclusory. He does not allege a later date on which he signed a probation order. Nor does he describe any notice of probation violation or revocation, or a related detainer.

[7] Assuming probation was stayed pending appeal, and the appeal was complete at the latest when the Kansas Supreme Court denied review on March 24, 2003; the period of probation was no longer stayed as of March 25, 2003. Further assuming no probation violation within the ensuing 12 months, Mr. McCormick's probation term expired on or around March 25, 2004. Under Kansas law, the action to revoke a defendant's probation must occur during the probationary term. K.S.A.2002 Supp. 22-3716(1); see State v. Grimsley, 15 Kan.App.2d 441, 444, 808 P.2d 1387 (1991)(A court has no jurisdiction to revoke probation when the probation period terminates before the issuance of an arrest warrant or filing of a complaint seeking revocation of probation.).

Petition over five years later. The court finds that the State of Kansas officially considers Mr. McCormick's 2001 sentences to be expired, and concludes his 2001 sentences have been satisfied.

The Supreme Court also clearly held that a habeas petitioner does not remain "in custody" under a conviction after the sentence imposed for it has fully expired, merely because the prior conviction is used to enhance the sentences imposed for subsequent crimes. As the Court explained in Maleng:

> We have interpreted the statutory language as requiring that the habeas petitioner be "in custody" under the conviction or sentence under attack at the time his petition is filed. See Carafas v. Lavallee, 391 U.S. 234, 238 (1968). In this case, the Court of Appeals held that a habeas petitioner may be "in custody" under a conviction whose sentence has fully expired at the time his petition is filed, simply because that conviction has been used to enhance the length of a current or future sentence imposed for a subsequent conviction. We think that this interpretation stretches the language "in custody" too far.
> * * *
> [O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for the purposes of habeas attack upon it.

Maleng, 490 U.S. at 490-93. In his original Petition, Mr. McCormick challenged only his 2001 convictions. After the court questioned if he was "in custody" on those sentences, petitioner stated in a footnote in his Amended Petition (Doc. 3, pg. 13) that he "in part" also challenges his 2004 sentences[8]. This court could liberally construe the Petition as asserting a challenge to his 2004 sentences, and hold that he is "in custody" thereunder.

---

[8] McCormick stated in the footnote that his 2001 sentences were used to enhance his 2004 sentences from 155 months to 195 months, and he attacks the enhancement as unconstitutional due to the 2001 convictions being in violation of his 6th Amendment right to counsel.

However, the court declines to do so in this case for two main reasons.  First, the court reiterates that the three claims raised by petitioner go directly and solely to the constitutionality of his 2001 convictions, and no federal constitutional grounds for relief from the 2004 convictions are alleged.  Second, petitioner cannot challenge his 2004 convictions in this Petition because he has not fully exhausted state court remedies on those convictions[9].

The court also notes the following holding of the Supreme Court in Lackawanna:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Lackawanna, 532 U.S. at 403-04.  It appears that petitioner's 2001 convictions are "conclusively valid" at this time.  Mr. McCormick pursued his available state court remedies on his 2001 convictions, albeit unsuccessfully.  Since he is not "in custody" on the 2001 convictions, they are "no longer open to attack" in federal court[10].

The court rejects petitioner's argument that he remains in

---

[9] On-line Kansas Appellate Courts records show Mr. McCormick has a Petition for Review pending before the Kansas Supreme Court in State v. McCormick, District Criminal Case No. 03CR236 (Appellate Case No. 92408).

[10] The fact that petitioner was unable to pursue remedies in federal court while he was still "in custody" due to the procedural requirement that he first exhaust state court remedies is simply a result of settled habeas corpus procedures.  In any event, if petitioner had raised all his claims on direct appeal, he would not have had to complete 1507 proceedings before seeking review in federal court.

custody on his 2001 sentences because they were indefinitely stayed. The state court records show defense counsel, Mr. George, asked for a stay pending appeal, and the judge agreed[11]. As the court previously found herein, petitioner's direct appeal was no longer pending after the Kansas Supreme Court ruled on March 24, 2003, and the stay ended. Petitioner's request that this court continue the stay imposed in 2001 by the judge at sentencing, is denied as outside this court's authority.

The court also rejects Mr. McCormick's argument that he is in custody under the 2001 sentences on the theory that they are

---

[11]

> At sentencing on the 2001 convictions the trial judge remarked in pertinent part:
> > You will be placed on probation for 12 months. You have credit for two days. As long as you abide by your conditions of probation you will have no further time to serve in custody. Your probation is unsupervised. * * * Before you leave today you need to sign your probation order, it will require you to obey all laws . . . . If you should change your place of employment or your address or phone number, it's up to you within seven days to notify the Clerk of the District Court . . . .
> > You are to maintain employment insofar as that's possible, or student status or some combination of the two, and you are to complete the Heartland recommendations and submit verification within 120 days. Mr. Johnson is the Court Services officer that is in charge of unsupervised probations so it will be to him that you will provide your verification. . . .[Y]ou would also need to go down and talk with Mr. Johnson before you leave. Although it's unsupervised, he will be the person in charge of monitoring the period of your probation and your compliance and this will give you the opportunity to meet with him to review the order and to provide your initial information.
>
> Rec. Vol. XVI, pps. 50-51. After the foregoing statement by the court, defense counsel asked, ". . . if the Court would consider an appeal bond for Mr. McCormick." The Court responded, "He is not being sentenced to any time so he doesn't need an appeal bond." Id., at 52. Mr. George replied, "Okay, I thought you would do it with any sentence, whether it involves incarceration or not." The court again questioned whether a bond was needed. The prosecutor stated, "if he wants an appeal bond he can certainly get one but that's going to put off the time he is on probation until after the appeal is decided." Id. at 53. Mr. George agreed that would be the effect and would mean defendant "wouldn't have to start paying the costs and all the things he has to do . . . . The court then stated, "Appeal bond will be set in the amount of $2500 OR . . . ." Mr. George asked, "Will I be preparing the appeal bond, Your Honor, for his signature?" The court responded, "Let me think about that," and "I don't know if they can use their standard OR bond form and call it an appeal bond or whether you will need to do one. Maybe you can talk with the clerk about that." Mr. Johnson, the probation officer who was present, then asked: "Your Honor, just for my clarification. Does he need to meet with me or is this stayed until the appeal process?" The court replied, "It's now stayed. But I am making it a condition of your bond you not violate the law." Id. at 55.

consecutive with his 2004 sentences. Petitioner cites <u>Peyton v. Rowe</u>, 391 U.S. 54 (1968) in support of his argument. <u>See also</u> <u>Foster v. Booher</u>, 296 F.3d 947, 949-50 (10th Cir. 2002). The Supreme Court held in <u>Peyton</u> that "a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes" of the federal habeas statutes. <u>Id</u>. at 67. However, petitioner does not allege facts showing that his 2004 sentences were imposed as consecutive to his 2001 sentences. The journal entry of sentencing in the state court records plainly shows his 2004 sentences were not ordered consecutive to his 2001 sentences.

Petitioner argues his 2004 sentences should be treated as consecutive to his 2001 probation term under state law. He cites K.S.A. 21-4608(c), which pertinently provides:

> Any person who is convicted and sentenced for a crime committed while on probation . . . for a felony shall serve the sentence consecutively to the term or terms under which the person was on probation . . . .

<u>Id</u>. However, the court has found that petitioner's 2001 probation term expired on March 25, 2004. He was sentenced on the later crimes on April 15, 2004. It follows that Mr. McCormick was not on probation when he was sentenced on the 2004 crimes, and K.S.A. 21-4608(c) does not apply.

Petitioner additionally argues he falls within the narrow exceptions to the Supreme Court's general rule requiring that a federal habeas corpus petitioner be "in custody" at the time he files his Petition. "The only exceptions [to this general rule] exist when: 1) counsel is not appointed in violation of the Sixth Amendment; or 2) no channel of review is available through no fault of the petitioner." <u>Broomes v. Ashcroft</u>, 358 F.3d 1251, 1254 (10th

10

Cir.), cert. denied, 543 U.S. 1034 (2004).

Mr. McCormick argues his case falls within the first exception in that he was denied his Sixth Amendment right to counsel at trial. See Gideon v. Wainwright, 372 U.S. 335 (1963). He generally claims the state trial judge never adequately informed him of his right to counsel so that his waiver of that right was not knowing and intelligent. He specifically acknowledges he chose to proceed pro se, but claims the trial court never informed him of "the dangers and disadvantages of proceeding pro se," the nature of the charges, the statutory punishments, possible defenses to the charges or mitigating circumstances, or "any factors" that must have been made clear for him to have validly waived his right to counsel. He also claims the judge did not inform him he would be required to follow the "intricate rules of evidence and courtroom procedure just like any lawyer."

The U.S. Supreme Court recognized in Faretta that a defendant must "voluntarily and intelligently" elect to conduct his own defense, which entails waiver of counsel. Faretta v. California, 422 U.S. 806, 835 (1975), quoting Johnson v. Zerbst, 304 U.S. 458, 464-465 (1938); see also United States v. Dinneen, 463 F.2d 1036, 1040 (10th Cir. 1972). However, it also recognized that the right to self-representation is not absolute. A trial judge may terminate self-representation or appoint "standby counsel"--even over the defendant's objection--if necessary. Id. at 834 FN 46; McKaskle v. Wiggins, 465 U.S. 168, 184 (1984).

Mr. McCormick argued before the state courts that he was denied his right to represent himself at trial at the same time he

11

was denied his right to counsel[12]. On the question of the claimed exception to the "in custody" rule, the only relevant inquiry is whether he was denied his right to counsel. It is plain from the record that defense counsel Mr. George did not act only as standby counsel. The records also plainly disclose that Mr. McCormick, in effect, sought and was granted hybrid representation at his state criminal trial[13]. There is no constitutional right to hybrid

---

[12] A defendant's waiver of his right to representation and his concomitant election to represent himself must be "clearly and unequivocally" asserted. United States v. Bennett, 539 F.2d 45 (10th Cir.), cert. denied, 429 U.S. 925 (1976). As the Tenth Circuit has observed, the reason a defendant must make an "unequivocal" demand for self-representation is that otherwise "convicted criminals would be given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel." Meeks v. Craven, 482 F.2d 465, 467 (9th Cir. 1973), *cited with approval by the Tenth Circuit in* Bennett, 539 F.2d at 51. It follows that if a defendant in a criminal proceeding makes an equivocal demand on the question of self-representation, he has a potential ground for appellate reversal no matter how the district court rules. If the district court denies defendant's equivocal demand to represent himself, the defendant will argue on appeal that his constitutional right to self-representation has been denied. And if the district court grants defendant's demand for self-representation, the defendant will argue on appeal that his waiver of his right to counsel was not intelligent, knowing and unequivocal. This was referred to as a form of the "cat and mouse" game mentioned in United States v. Padilla, 819 F.2d 952, 959 (10th Cir. 1987). U.S. v. Treff, 924 F.2d 975, 978-79 (10th Cir.), cert. denied, 500 U.S. 958 (1991).

[13] The pretrial motions filed by Mr. McCormick, his arguments to the trial court, and his arguments in post-judgment proceedings show that his request for self-representation was, in essence, a demand for hybrid representation. In particular, he asked to be allowed to make a statement during closing and that his counsel be allowed to make legal arguments during closing. He also requested that counsel be allowed to interject objections when McCormick questioned a witness. During a hearing on pretrial motions, McCormick referred to his Notice of pro se status, and the judge advised:

> "The same rules apply, Mr. McCormick. . . . . . . [W]hoever starts with examining a witness, whether Direct or Cross, needs to finish and that's the person who has the duty or the obligation to make the objections during the other parties' examination of that witness."

Rec. Vol. X pgs. 2-3.

In his pro se Brief of Appellant on direct appeal to the KCOA, Mr. McCormick presented his arguments regarding his rights to self-representation and counsel. In summary, he argued that the trial court had "unfairly restricted" his "right to both counsel and to 'appear and defend in person'." Id. At 22-24. He wanted counsel to be allowed to make technical, legal objections and arguments, at the same time he was allowed to personally confront witnesses and present his defense. Instead, the court adhered to the existing rule for multiple attorneys on one side, that "only one attorney may examine or cross-examine a witness." Kan.Sup.Ct. Rule 161. In effect, the court instructed petitioner that he would be required to follow the same rules as attorneys. Nevertheless, Mr. McCormick was given more leeway than the trial judge initially ordered. For instance, he was allowed to object to jury instructions, when his counsel had not; and was even offered the opportunity to let Mr. George take over during his closing argument. Rec. Vol. XIV at 606-07.

representation.  <u>Treff</u>, 924 F.2d at 979 FN6; <u>U.S. v. Callwood</u>, 66 F.3d 1110, 1114 (10th Cir. 1995); <u>Bennett</u>, 539 F.2d at 49; <u>United States v. Hill</u>, 526 F.2d 1019, 1024-25 (10th Cir. 1975), <u>cert</u>. <u>denied</u>, 425 U.S. 940 (1976).  The decision to allow hybrid representation and to limit the defendant's participation in such representation is within the discretion of the trial court.  <u>Bennett</u> at 49; <u>Hill</u> at 1021-25.  Mr. McCormick was provided hybrid representation which included representation by counsel.  Mr. George was appointed to and did represent him[14].  The court concludes that the state court records refute petitioner's allegations of a <u>Gideon</u> violation at his criminal trial.  At most then, Mr. McCormick's claim boils down to one of ineffective assistance of counsel during cross-examination of a witness and closing argument[15].  Habeas petitioners are not entitled to an exception from the "in custody" requirement on the ground that their counsel provided inadequate representation.  <u>Lackawanna</u>, 532

---

Petitioner even states that during his direct appeal he mistakenly thought he had a right to hybrid representation, or to dictate what parts of the trial his standby counsel would conduct.

[14] Mr. McCormick did not appear without his counsel, Mr. George, at any stage of the criminal proceedings. Mr. George represented him in both his trials, and it is clear from counsel's arguments and statements in the record that he was well versed in petitioner's case and defense theories. This court's review of the trial transcripts clearly reveals that Mr. McCormick had ample access to and utilized his appointed counsel, limited only by his insistence on cross-examining a witness and making closing argument. Defense counsel Mr. George questioned witnesses in pretrial proceedings and at trial. He made most of the defense objections, and he made arguments on most of Mr. McCormick's many pretrial and post-trial motions and at sentencing. The court was very accommodating to petitioner's desire for hybrid representation, and commented that counsel and Mr. McCormick presented significant legal authority for their arguments

[15] If the record had indicated a <u>Gideon</u> violation, prejudice would be presumed. The court notes only in passing that petitioner does not describe any testimony or legal argument that would have been presented at his trial, but for the alleged denial of counsel during closing and to object when Mr. McCormick was cross-examining.

13

U.S. 394 (no § 2254 remedy for ineffective assistance of counsel with respect to prior conviction).

However, even if petitioner were held to have proceeded pro se with standby counsel only, his allegations in support of his claim that his waiver of counsel was not knowing and intelligent are either inadequate or refuted by the record. Once a defendant elects to represent himself, the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal "chores" for the defendant that counsel would normally carry out. McKaskle, 465 U.S. at 183-84; Martinez v. Court of Appeal of California, 528 U.S. 152, 161-62 (2000). Thus, petitioner's complaint that the judge did not advise him of possible defenses and mitigating circumstances does not support his claim. Moreover, contrary to McCormick's conclusory claims, the record of the "preliminary hearing/ motions/ arraignment" reflects that Judge Martin asked if defendant wished to be "formally advised by the State of the charges?" Rec. Vol. IV, pg. 85. Defense counsel, Mr. George, answered, "No, Your Honor. Mr. McCormick has seen the complaint and definitely knows what he's charged with so we'd waive reading and enter a plea of not guilty." Id. In addition, petitioner's implication that he was unaware of the possible penalties is not persuasive given the arguments made by him in several pretrial motions, which reflect his understanding of the statutes relevant to his offenses. The trial was not long or complex, and Mr. McCormick had been through one full jury trial on the same charges. Furthermore, McCormick's allegations of his legal ignorance are conclusory, while circumstances reveal instead that he is an experienced, articulate, knowledgeable litigant, who

14

by his own account is not untrained in the law[16].

Furthermore, even if petitioner proceeded pro se with standby counsel, the factual findings of the state courts underlying the holdings that he did so knowingly and intelligently are accepted as true and are adequately supported by the record. The judge who presided over both his trials also determined his 1507 motion, and explicitly found she had informed Mr. McCormick of his right to counsel and the dangers of proceeding pro se[17]. The KCOA on direct appeal and on appeal in the 1507 proceedings held that McCormick's "participation as pro se counsel was voluntary and

---

[16]  The court takes judicial notice of Mr. McCormick's litigation history in federal court, which includes eight prior cases. As noted in the Appellee's Brief on appeal of the 1507 motion, Case No. 92497 (filed March 21, 2005)(Brief):

> Both before and after appointment of counsel, Defendant filed numerous motions and notices on his own behalf . . . ," citing R. II, 46-159; III 160-269. In addition, as Judge Martin was well aware, Defendant was not inexperienced with the district court. . . . The docket reflects at least six civil or criminal cases involving Defendant prior to trial in the underlying criminal case plus eighteen more between that time and the time he filed his brief in this appeal."

Brief at 3.

[17]  In her Memorandum Decision denying McCormick's 1507 motion, Judge Martin stated as follows:

> . . . Mr. McCormick understood his rights very well. Inquiry was made by the court of Mr. McCormick on September 18, 2000, when defendant expressed his desire to represent himself. He confirmed his pro se status during a further inquiry on November 22, 2000. The requirements of Buckland were met. The defendant made a voluntary and intelligent decision to proceed pro se. At Mr. McCormick's request, Mr. George continued to assist him, providing advice and instruction and participating in the trial as requested by Mr. McCormick in accordance with the guidelines set forth by the court.

State of Kansas v. McCormick, 00CR604 (Douglas Co. D.Ct. April 21, 2004), attached to Brief of Appellant, Appellate Case No. 04-92497.

The judge's inquiries made in this case had to be preened from the record, and are not a model of clarity and thoroughness. Even when a defendant has appeared before a judge for a prior trial on the same charges, that judge is required to make a detailed inquiry on the record with regard to the waiver of counsel. The bench conferences at petitioner's trial do not appear to have been transcribed, and there is no Volume III among the records provided. Despite these shortcomings, the court finds the record sufficiently supports the state court findings.

15

of his own choice." They also found the trial court advised McCormick he would be better off accepting the appointment of an experienced trial lawyer. State v. McCormick, No. 92947, at *4 (KCOA, Sept. 20, 2005, unpublished), *citing* Slip Op. at 8-9. They further noted the trial court had reviewed the record and found no merit to McCormick's 1507 claim.

The court additionally finds no merit to petitioner's argument that he is entitled to be treated as "in custody" under the second exception that "no channel of review is available through no fault of the petitioner." The expiration of petitioner's sentence before he complied with the procedural prerequisite to proceeding in federal court of exhausting all his state remedies does not amount to exceptional circumstances beyond his control warranting application of this exception.

The court finally notes it is clear from the record petitioner failed to raise his argument that his waiver of his right to counsel was not knowing and intelligent on direct appeal. As the KCOA found in its opinion on McCormick's 1507 motion, he was instead attempting "to make an argument on this issue that he did not make in his direct appeal;" and was "precluded from doing so." (9/2/05 KCOA opinion at 4). Petitioner may not raise claims in federal court which were denied in state court on procedural grounds absent a showing of cause and prejudice.

With regard to petitioner's conclusory allegation that he was denied effective assistance of appellate counsel, the state court reasonably found that when Mr. McCormick "fired the appellate defender office as his appellate counsel, he chose to proceed pro se;" and the "ineffective assistance claim has no room in this

16

scenario." Id., at *24.

For the foregoing reasons, the court concludes it lacks jurisdiction to hear Mr. McCormick's claims regarding his 2001 convictions because he was not "in custody" under those sentences when he filed his federal Petition. Therefore, dismissal of Mr. McCormick's § 2254 claims is required. See Davis v. Roberts, 425 F.3d 830, 834 (10th Cir. 2005).

**IT IS THEREFORE ORDERED** that respondents' Motion to Dismiss (Doc. 14) is sustained, and this action is dismissed for lack of jurisdiction.

**IT IS FURTHER ORDERED** that petitioner's Motion to Extend Stay (Doc. 22) is denied; and his Motion to Expedite Proceedings (Doc. 23) is denied as moot.

**IT IS SO ORDERED**.

Dated this 6th day of July, 2007, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge

17